IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

BEVERLY S. GOULDMAN,           )
                               )
            Plaintiff,         )
                               )
v.                             )   Case No. CIV-09-484-RAW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

**REPORT AND RECOMMENDATION**

Plaintiff Beverly S. Gouldman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 1, 1947 and was 61 years old at the time of the ALJ's decision. Claimant completed her high school education with some vocational training. Claimant worked in the past as a customer service representative. Claimant alleges an

inability to work beginning April 11, 2006, due to recurrent ventral hernias with subsequent abdominal muscle removal and atrophy, deep venous thrombosis and venous disease of the left leg, degenerative joint disease of the lumbar spine and knees, carpal tunnel syndrome, and asthma.

**Procedural History**

On December 8, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 19, 2008, an administrative hearing was held before ALJ Jeffrey S. Wolfe in Sallisaw, Oklahoma. On December 16, 2008, the ALJ issued an unfavorable decision on Claimant's application. On October 14, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a

customer service representative. The ALJ also found at step five that

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate medical opinion evidence offered by treating physicians; (2) failing to discuss significantly probative evidence which was in conflict with his findings; and (3) reaching an RFC which was not supported by substantial evidence.

**Evaluation of Treating Physicians' Opinion Evidence**

Claimant asserts the ALJ erroneously rejected the opinions of her treating physicians in reaching his decision. The physicians involved are Dr. J. Patrick Sullivan and Dr. Timothy Robison. On November 1, 2004, Claimant was attended by Dr. Sullivan for treatment of a continuing condition involving painful blood clots in her left leg. Claimant was prescribed Hydrocodone, which made her ill, and the anti-coagulant Plavix. Dr. Sullivan diagnosed Claimant with phlebitis or cellulitis. (Tr. 328).

On May 9, 2006, Claimant saw Dr. Robison. Dr. Robison noted Claimant's history of experiencing a large number of recurrent ventral hernias. Repairs of the hernias were made in 1986 and 2002. (Tr. 231). On May 18, 2006, abdominal and pelvic CT scans showed several small ventral hernias with ventral wall diastasis

and protrusion of colon, peritoneal fat, and small bowel. Dr. Robinson also noted lower lumbar degenerative changes with spondylosis at L-5, spondylolisthesis, and very marked accentuation of the lower lumbar lordosis. (Tr. 236).

On May 23, 2006, Dr. Robison discussed the placement of a Greenfield filter, continuing with Plavix, and a laparoscopic ventral hernia repair with Claimant. (Tr. 230). Claimant underwent the procedures on May 26, 2006.

Claimant was discharged on June 3, 2006. At that time, Dr. Robison restricted Claimant from lifting, straining, or driving. (Tr. 220-21). Claimant was restricted from lifting, straining, or driving again after she was hospitalized from June 9 through 12, 2006, complaining of nausea, vomiting, and evidence of a partial small bowel obstruction. (Tr. 224-26).

On June 15, 2006, Dr. Robison again saw Claimant. He noted chronic venous insufficiency from previous DVTs. Her abdomen was "very uncomfortable, but this is to be expected considering [he] replaced the entire abdominal wall with fabric." (Tr. 228).

Claimant was attended by Dr. Sullivan on June 23, 2006, who noted normal objective findings but abdominal pain. (Tr. 325-26). Dr. Robison found Claimant to be doing very well on June 29, 2006, although she was experiencing pain in her abdomen requiring

narcotic pain medication. (Tr. 229).

Claimant was found to be doing very well again from July 6, 2006 until July 17, 2006. (Tr. 323-24, 337). On September 6, 2006, however, Claimant reported to Dr. Sullivan that she was experiencing right side chest pain and shortness of breath. An x-ray revealed no acute cardiopulmonary disease but scattered post-inflammatory residuals. (Tr. 320-22, 333-34).

On September 12, 2006, Claimant saw Dr. Clint Kirk, an orthopedic surgeon, for treatment of bilateral knee pain. Testing revealed her knees had bilateral slight flexion contractures of 2 to 5 degrees, 1+ effusion bilaterally, stable ligaments, and evidence of severe end stage patellofemoral disease with decently maintained joint spaces. Dr. Kirk expressed that he preferred to defer surgery in favor of conservative treatment, as long as it was effective. (Tr. 199).

Claimant returned to Dr. Kirk in February of 2007, complaining of left knee pain. Dr. Kirk noted Claimant's contraindication for knee replacement surgery due to DVT. He also found that Claimant's intolerance to the pain for knee injections might preclude knee surgery as well. (Tr. 289).

On March 6, 2007, Claimant saw Dr. Kirk with carpal tunnel syndrome. Dr. Kirk also noted that two injections in Claimant's

knees had not provided much relief and that she limped out of the office. (Tr. 288). On March 12, 2007, Claimant underwent a right carpal tunnel release. (Tr. 268-70).

On March 29, 2007, Claimant saw Dr. Kirk for a follow-up on her carpal tunnel release. During the visit, Dr. Kirk again expressed concern for knee replacement surgery due to blood clots and other risks of complications. (Tr. 287).

On March 12, 2007, Dr. Luther Woodcock, a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment on Claimant. He found Claimant could occasionally lift/carry 10 pounds, frequently lift/carry less than 10 pounds, stand and/or walk at least 2 hours in an 8 hour day, sit about 6 hours in an 8 hour day, and engage in unlimited pushing and/or pulling. (Tr. 256-64).

On April 4, 2007, Dr. Sullivan completed a Physical Capacities Evaluation form on Claimant. He found Claimant could sit for four hours in an 8 hour day and stand or walk for one hour in an 8 hour day. He determined Claimant could occasionally lift and carry up to 10 pounds but never anything of greater weight. Claimant was found to not be able to engage in pushing and pulling or in fine manipulation. Claimant could not use her feet for repetitive movements as in the operation of foot controls. Claimant could not

8

bend, squat, crawl, climb, and could only reach above shoulder level occasionally. (Tr. 293). Further treatment was not considered to improve Claimant's condition. Dr. Sullivan concluded Claimant could not perform at any level of physical activity on a sustained basis. (Tr. 294).

On April 7, 2007, Dr. Robison completed the same form. He essentially reached the same findings as Dr. Sullivan. (Tr. 295-96).

On April 10, 2007, Dr. Sullivan diagnosed Claimant with phlebitis and prescribed Coumadin and hose. (Tr. 331).

On August 20, 2007, Dr. John Stuebner authored a letter which noted Claimant had been his patient since 1997. He set forth Claimant's treatment history, especially noting her phlebitis and recurring hernia problems. He noted the restriction upon her lifting to less than 10 pounds and her inability to stand on her feet. (Tr. 312). An August 22, 2007 letter from Dr. Sullivan noted the same two restrictions. (Tr. 313).

On September 4, 2007, Dr. Kirk noted Claimant's continuing left knee pain. He stated Claimant was in "dire need" of knee replacement but that it was contraindicated due to her other medical conditions. (Tr. 346). Treatment for Claimant's conditions with Dr. Sullivan, including continuing abdominal pain,

continued through December of 2007. (Tr. 362-64, 371-73).

On February 6, 2008, Dr. Subramanian Krishnamurthi, a non-examining consultant, completed another RFC assessment form on Claimant. He found Claimant could sit for one hour at a time, stand or walk for 10-30 minutes at a time, sit for 6 hours in an 8 hour day, stand or walk for one hour in an 8 hour day. He also determined Claimant could frequently lift or carry up to 10 pounds, occasionally lift or carry up to 20 pounds, and never lift of carry greater weight. The consulting physician also found Claimant could engage in unlimited grasping and fingering, could occasionally bend, squat, crawl, climb and frequently reach. Mild restrictions were noted to Claimant's exposure to marked changes in temperature and humidity and dust, fumes, gases. (Tr. 304-05).

From April 1, 2008 until September 30, 2008, Claimant sought medical treatment from Dr. Sullivan and Dr. Kirk for abdominal pain, knee arthritis, back pain, asthma, and decreased mobility in her left foot. (Tr. 341, 351-53, 357-59, 382-83).

On November 7, 2008, Dr. Sullivan wrote a letter on Claimant's behalf. Dr. Sullivan stated he had treated Claimant since 2004, that she suffered from severe degenerative arthritis of the lumbar spine and the knees bilaterally. He noted Claimant was not a candidate for knee replacement, has a history of deep vein

10

thrombosis, carpal tunnel, and six hernia repairs. Dr. Sullivan states Claimant is unable to stand or sit for more than 30 minutes at a time. (Tr. 384).

In his decision, the ALJ determined Claimant suffered from the severe impairments of carpal tunnel syndrome, status post release and degenerative joint disease of the knees. (Tr. 14). The ALJ assessed Claimant's RFC to include occasional lifting and/or carrying of 10 pounds, frequent lifting and/or carrying less than 10 pounds, standing and/or walking at least 2 hours in an 8 hour workday, and sitting about 6 hours in an 8 hour workday. (Tr. 15). The ALJ concluded Claimant retained the RFC to perform her past relevant work as a customer service representative. (Tr. 21). Additionally, the ALJ found Claimant had acquired transferable skills from her past relevant work. The vocational expert testified under the hypothetical questioning of the ALJ that Claimant could perform the occupations of telemarketer, appointment clerk, registration clerk, and data entry clerk. (Tr. 22-23).

With regard to the opinions of Dr. Sullivan and Dr. Robison, the ALJ found the Physical Capacities Evaluations completed by them and the limitations they found were "entirely inconsistent with their own medical records/progress notes." The ALJ further found that these physicians' findings of an inability to perform any

11

physical activity on a sustained basis was inconsistent with the medical evidence and Claimant's activities of daily living. (Tr. 21).

The ALJ is required to give it controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

12

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Given the extensive record of treatment and limitations placed on Claimant due to her medical conditions, this Court cannot conclude the ALJ's evaluation and rejection of the opinions of Claimant's treating physicians was adequately explained or well-founded. Claimant's hernia treatment and continued weight and

13

standing restrictions do not support the ALJ's RFC evaluation. Further, the ALJ did not provide specific and legitimate reasons for his rejection under the factors required by the regulations and case authority. On remand, the ALJ shall discuss the extensive treatment records and the basis for the complete rejection of the treating physicians' opinions on limitation.

**Failure to Discuss Probative Evidence**

Claimant also contends the ALJ failed to discuss certain additional evidence of limitation. Specifically, Claimant argues the ALJ failed to discuss or find additional impairments attributable to (1) repair of four hernias and treatment of over ten ventral defects; (2) abdominal CT scans finding rectus muscle atrophy and diastasis; (3) Claimant's DVT; (4) left leg problems, including venostasis, stasis dermatitis, post-phlebitic syndrome, edema, and clotting; (5) severe lumbar degenerative condition; (6) asthma exacerbations; (7) bowel obstruction treatment; and (8) various findings of limitation upon her extremities.

The record on review must demonstrate that the ALJ considered all of the evidence. The ALJ is not, however, required to discuss every piece of evidence. But it is clear that, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as

14

well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)(citations omitted). The ALJ referenced much of Claimant's past medical treatment for conditions such as her hernias and leg problems. He did not, however, apparently consider the severity of the diagnoses for those conditions or their limitations upon her ability to engage in substantial gainful activity. This Court is most concerned with the ALJ's failure to consider the effects upon Claimant's ability to lift and carry weight and ability to stand and walk which are clearly adversely affected by Claimant's medical conditions. On remand, the ALJ shall re-evaluate the medical record and the limitations brought about by the conditions from which Claimant suffered during the relevant period of disability.

### RFC Evaluation

Because the ALJ failed to properly consider the opinions of Claimant's treating physicians and the totality of the limitations imposed by her medical conditions, the ALJ shall reconsider his RFC evaluation on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

15

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of February, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE